UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLSTATE INSURANCE CO. | : |
|     Plaintiff, | : |
| v. | :     3:08cv603 (VLB) |
| | : |
| MARGARET BURNARD and | : |
| CALISTA KNORR | : |
| Defendants. | :     MARCH 31, 2010 |

**DRAFT MEMORANDUM OF DECISION DENYING THE DEFENDANT'S [DOC. #26] MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING THE DEFENDANT'S [DOC. #34] CROSS-MOTION FOR SUMMARY JUDGMENT, AND GRANTING THE PLAINTIFF'S [DOC. #28] MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Allstate Insurance Co. (hereinafter "Allstate"), initiated this action for declaratory judgment against Defendants Margaret Burnard and Calista Knorr.  Allstate seeks a determination that it has no duty to defend or indemnify Burnard in a pending lawsuit in the Connecticut Superior Court, in which Knorr alleges claims against Burnard for libel per se, libel per quod, intentional infliction of emotional distress, and negligent infliction of emotional distress. [Doc. #1].  On December 17, 2008, this Court entered a default judgment in favor of Allstate against Knorr for failure to appear, leaving Burnard and Allstate as the sole remaining parties to the present action. [Doc. #25].

Three motions are before the Court: (1) the Defendant's motion [Doc. #26] for judgment on the pleadings; (2) the Plaintiff's motion [Doc. #28] for summary judgment; and (3) the Defendant's [Doc. #34] motion for summary judgment.  For the reasons stated hereafter, the Defendant's motion for judgment on the

pleadings is converted and incorporated into the Defendant's cross-motion for summary judgment, the Defendant's motion for summary judgment is denied, and the Plaintiff's motion for summary judgment is granted.

I. Background

The present declaratory judgment action stems from an underlying lawsuit filed by Calista Knorr against Margaret Burnard in the Connecticut Superior Court. Knorr, a caretaker in Burnard's employ from 2001-2005, alleges that in 2005 Burnard made erroneous and malicious statements to the Southbury Police Department and others, by accusing Knorr of stealing a valuable ring and other personal property. [Doc. #28, Exh. 2]. In the underlying suit, Knorr brings claims of libel per se, libel per quod, intentional infliction of emotional distress, and negligent infliction of emotional distress. [Id.].

Burnard holds a renter's insurance policy (hereinafter "the Policy") with Allstate, which is currently defending her in the underlying lawsuit, subject to a reservation of rights. Allstate contends that the claims in the underlying suit do not give rise to coverage under the Policy, and seeks a declaratory judgment that it has no duty to defend or indemnify Burnard. In its motion for summary judgment [Doc. #28], Allstate argues that it has no duty to defend Burnard in the state court action for five reasons: (1) Knorr does not allege a claim for bodily injury; (2) there is no additional evidence outside Knorr's claims that demonstrates that bodily injury occurred; (3) Knorr does not allege a claim for

property damage; (4) Knorr does not allege injury or damage caused by an occurrence; and (5) Knorr's claims are excluded by an intentional act exclusion in the Policy. Id.

Burnard's cross-motion [Doc. # 34] for summary judgment incorporates by reference her motion [Doc. #26] for judgment on the pleadings. Both motions essentially make the same assertion; namely, that Allstate has a duty to defend Burnard under the plain language of the policy. Burnard argues in both that, inter alia, she (1) states a claim for bodily injury; (2) alleges injury caused by an occurrence, because the claims of negligent infliction of emotional distress, libel per se, and libel per quod are negligence-based "accidents," and thus "occurrences" within the meaning of the Policy; and (3) the claims are not excluded by the intentional act exclusion. [Doc. #27].

**II. Standard of Review**

As a preliminary matter, the Defendant has filed a motion for judgment on the pleadings in accordance with Fed. R. Civ. P. 12(c). Fed. R. Civ. P. 12(c) provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard for a Rule 12(c) motion for judgment on the pleadings is the same as the standard for consideration of a Rule 12(b)(6) motion to dismiss. Romanella v. Hayward, 933 F. Supp. 163, 165 (D. Conn. 1996). However, when a district court considers materials outside the pleadings, a Rule 12(c) motion for judgment on the

pleadings will be converted to a Fed. R. Civ. P. 56 motion for summary judgment. Wilds v. U.S. Postmaster Gen., 989 F.Supp. 178 (D. Conn 1997). Rule 12(c) further provides that, upon conversion, the parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56. In determining whether an opportunity has been afforded, the critical issue is "whether the non-movant 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" Krijn v. Poque Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir.1990).

In this matter, the Defendant filed a motion for judgment on the pleadings in accordance with Fed. R. Civ. P. 12(c), and the Plaintiff subsequently filed a motion for summary judgment shortly thereafter. The Defendant has filed a response to the motion for summary judgment and has also cross-moved for summary judgment in its favor. The Court notes that the Defendant has largely incorporated her initial motion for judgment on the pleadings by reference in both its response to the Plaintiff's motion for summary judgment and the Defendant's cross-motion for summary judgment, making the arguments in each of the three motions largely indistinguishable. As the parties have both fully briefed this matter pursuant to the standard for summary judgment, the Court will exercise its discretion and address all arguments pursuant to the standard prescribed for summary judgment by Fed. R. Civ. P. 56.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court "construe[s] the evidence in the light most favorable to the non moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004)(internal citations omitted).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (internal citations omitted).  "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski, 396 F.3d at 69.  "[T]he burden on the moving party may be discharged by 'showing'-that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002)(internal citations omitted).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

**III. Analysis**

### A. Duty to Defend

Allstate argues that it has no duty to defend Burnard in the underlying state court action, while Burnard argues to the contrary. This declaratory judgment action hinges on interpretation of the renter's insurance policy issued by Allstate to Burnard; namely, whether the facts alleged in the underlying state action trigger coverage under the Policy.

An insurer, under Connecticut law, has a duty to defend if a complaint states facts that brings its claim or claims within the policy coverage. Missionaries of Co. of Mary, Inc. v. Aetna & Sur. Co., 155 Conn. 104 (1967). The interpretation of an insurance contract as well as an insurer's duty to defend are questions of law to be decided by the Court. Community Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co., 254 Conn. 387, 395 (2000); American Home Assur. Co. v. Abrams, 69 F. Supp.2d 339, 348 (D. Conn. 1999). The insured in a coverage dispute has the burden of proof to show that the claims against him are within the express terms of the insurance policy. Downs v. National Cas. Co., Conn. 490, 496 (1956). In Connecticut, insurance policies are construed according to general rules of contract interpretation, and as such, must be enforced in accordance with the parties' intent, as derived from the plain and ordinary meaning of the policy's terms. Ohio Cas. Ins. Co. v. Dentek, Inc., 283 F.Supp.2d 655, 659 (D.Conn 2003). If a provision in an insurance policy is susceptible to two or more reasonable interpretations, that ambiguity will be

**6**

resolved in favor of the insured; however, when the language is clear, no such construction is applied. Id.; accord Western World Ins. Co. v. Peters, 989 F.Supp. 188, 191 (D.Conn 1997). The fact that the parties advance different interpretations of the policy language does not necessitate a conclusion that the language is ambiguous. Ohio Cas. Ins. Co., 283 F.Supp.2d at 659. However, "[i]f an allegation of the complaint falls even possibly within the coverage [provided by a policy], then the insurance company must defend the insured." Moore v. Continental Casualty Co., 252 Conn. 405, 409, 746 A.2d 1252 (2000). In other words,

> The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint.

Security Ins. Co. of Hartford v. Lumbermens Mutual Casualty Co., 264 Conn. 688, 711-12, 826 A.2d 107 (2003). Thus, to determine whether Allstate has a duty to defend Burnard, the Court must look to Knorr's complaint in the underlying action in the context of coverage provided by the relevant policy. The Court will turn first to the language of the Policy.

> The Policy provides, in relevant part:
>
> Subject to the terms, conditions, and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy.

> **We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false, or fraudulent. We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.**

[Doc. #1, Ex. A].

"Bodily injury" is defined in the Policy as "...physical harm to the body, including sickness or disease, and resulting death, except that bodily injury does not include: (a) any venereal disease; (b) Herpes; (c) Acquired Immune Deficiency Syndrom (AIDS); (d) AIDS Related Complex (ARC); (e) Human Immunodeficiency Virus (HIV); or any resulting symptom, effect, condition, disease, or illness related to (a) through (e) above." Id. The Policy defines an "occurrence" as ". . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage." Id. "Property damage" is defined as ". . . physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." Id.

Knorr, in the underlying suit, alleges that as a result of Burnard's statements, she endured public ridicule and humiliation; was annoyed, embarrassed, and ashamed; suffered pecuniary loss; suffered damage to her reputation; suffered emotional distress; has lost good will and business of those in her community; and has been unable to continue her employment with

Burnard. [Doc. #28, Exh. 2]. Allstate argues that none of these allegations qualify as bodily injury under the Policy. [Doc. #28 p. 10]. Burnard, on the other hand, asserts that emotional distress is itself a form of bodily injury, and that psychosomatically induced psoriasis suffered by Knorr as a result of the emotional distress brought about by Burnard's statements also qualifies as bodily injury.

Under prevailing Connecticut contractual interpretation, Burnard's contention that pure emotional distress is a "bodily injury" under the Policy necessarily fails. The Court first notes that nothing in the Policy language expressly includes emotional distress as "bodily injury." Absent this express inclusion, the Court looks to the Connecticut Supreme Court's guidance that emotional distress is not in itself "bodily injury" for the purposes of an insurance contract. Moore v. Continental Cas. Co., 252 Conn. 405, 746 A.2d 1252 (Conn. 2000). In Moore, the Connecticut Supreme Court prescribed the following scope for interpretation of the term "bodily injury," which, in line with other precedent, this Court adopts:

> First, the word bodily as ordinarily used in the English language strongly suggests something physical and corporeal, as opposed to something purely emotional. Webster's Third New International Dictionary confirms this notion, and associates the term bodily with the physical aspects of the human body, and contrasts it with the nonphysical aspects of the human experience such as the mental and spiritual. In the insurance policy, the word bodily is used as an adjective to modify the terms injury, harm, sickness and disease. Including purely emotional harm arising out of economic loss as a form of bodily injury would be tantamount to defining the term bodily injury with an antonym. At the very least, such a construction would

> render the term bodily superfluous as an adjective modifying the term injury. It is fair to infer that the use of the term bodily was employed in the policy both accurately and purposefully.

Id. at 410-411.  While the Court is not fully convinced of a clear-cut distinction between the mind and the body, and while even the Moore Court recognizes the inherent "interrelatedness of the mind and body," (see discussion on psoriasis as physical manifestation of emotional distress infra), this Court follows Moore's guidance and finds that, separate from the issue of physical manifestation of emotional distress, Knorr's claims of emotional distress in themselves do not involve physical injury or physical harm, and therefore do not trigger a duty to defend under the Policy.  See First Investors Corp. v. Liberty Mutual Ins. Co., 152 F.3d 162, 166-67 (2d Cir.1998); Keating v. National Union Fire Ins. Co., 995 F.2d 154, 156 (9th Cir. 1993); Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc., 493 F.2d 257, 260-61 (6th Cir. 1974) (no duty to defend against claim for emotional distress arising out of slander and false arrest); SL Industries, Inc. v. American Motorists Ins. Co., 128 N.J. 188, 202, 607 A.2d 1266 (1992) (no duty to defend against claim for humiliation, loss of self-esteem, irritability and sleeplessness arising out of action for age discrimination).

Burnard also contends that Knorr suffered psoriasis as a physical manifestation of emotional distress brought on by Burnard's conduct. [Doc. #27 at 8 n.3].  While psoriasis can be viewed as a physical manifestation or symptom of emotional stress, it could arguably qualify as a "bodily harm" accompanying emotional distress under the Policy.  In Moore, the Plaintiff argued that emotional

**10**

distress qualified as bodily harm because "modern medical science teaches that emotional distress is accompanied by some physical manifestation." The Connecticut Supreme Court noted:

> Although we do not question the modern medical understanding of the interrelatedness of the mind and body, we disagree that such an understanding determines the meaning of the policy language in question in the present case . . . It is undoubtedly true that emotional distress ordinarily might be accompanied by some physical manifestations, such as an altered heart rate and altered blood pressure, and perhaps other such manifestations as changes in the size of the pupils, and sleeplessness and headaches. That does not mean, however, that "bodily harm, sickness or disease," as used in the insurance policy in this case, necessarily includes emotional distress caused by economic loss. The question in this case is the legal meaning of "[b]odily [i]njury" as defined in the policy. It is not the medical or scientific question of the degree to which the mind and the body affect each other.

Moore, at 1256-1257. The Connecticut Supreme Court therefore determined that an allegation of emotional distress was not an allegation of "bodily injury" per se, just because of the unquestionable "interrelatedness of the mind and body." Therefore Moore did not foreclose, and in fact acknowledged, the possibility that an allegation of emotional distress that noted accompanying symptoms such as psoriasis could qualify as a bodily injury. Accordingly, this District Court has followed this guidance and identified an allegation of loss of sleep as a qualifying bodily injury:

> [The plaintiff] has also claimed as an injury her "regular loss of sleep," and [the defendant] argues that this too should be deemed non-bodily injury under the policy. The Court disagrees. In Moore, the Connecticut Supreme Court included "sleeplessness" among the "physical manifestations" of emotional distress that might themselves be covered as bodily injury.

**11**

**Peck v. Public Service Mut. Ins. Co., 363 F. Supp.2d 137, 144 (D. Conn. 2005)**.

**The Court, however, must examine only the facts in the underlying complaint, and determine whether those facts appeared to bring the claimed injury within the Policy coverage. Schwartz v. Stevenson, 37 Conn. App. 581, 657 A.2d 244 (Conn. 1995); Moore v. Continental Cas. Co., 252 Conn. 405, 746 A.2d 1252 (Conn. 2000); QSP, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 352 (2001); Security Insurance Co. v. Lumbermens Mutual Casualty, 264 Conn. 688, 712 (2003). The underlying complaint lacks any assertion that Knorr suffered from psoriasis as a result of Burnard's conduct. [Doc. #1, Ex. 4]. Burnard acknowledges that Knorr's affliction with psoriasis only became apparent through the process of discovery. [Doc. #27 at 8, n.3]. In Schwartz v. Stevenson, the court noted "[i]t is the allegations on the face of the complaint that govern the duty to defend." Schwartz at 586. Here, the Court finds no allegations on the face of the underlying complaint that Knorr suffered from psoriasis, and therefore cannot find that Allstate has a duty to defend Burnard on the basis of a physical manifestation of Knorr's emotional distress.**

**Burnard does note that Knorr's claim for negligent infliction of emotional distress is that ". . . the emotional distress was severe enough that it might result in bodily injury." [Doc. #1, Ex. B, Count 4, 14]. The Connecticut Supreme Court has noted that:**

> recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact...in such cases, "the defendant would not be liable unless the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm.

Perodeau v. City of Hartford, 259 Conn. 729, 749 (2002)(quoting Montinieri v. Southern New England Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978)). Therefore, while Knorr's complaint alleged conduct that could have resulted in bodily harm, meeting the standard for negligent infliction of emotional distress, the Complaint does not allege actual bodily injury necessary to trigger coverage under the Allstate policy. Consequently, the Court finds that the claims of negligent infliction of emotional distress, as alleged, are only speculatively connected to a "bodily injury" as defined by the decision in Moore, and do not trigger a duty for Allstate to defend on Burnard's behalf.

Similarly, the underlying lawsuit alleges no claims for "property damage" under the policy. "Property damage" in the insurance context has been interpreted by the Connecticut Supreme Court to exclude commercial or economic loss unrelated to damage or loss of use of tangible property. Williams Ford Inc. v. The Hartford Courant, 232 Conn. 559. 581 (1995). Therefore, Knorr's claims of loss of good will, pecuniary loss, and economic loss, absent some other injury or loss of use of tangible property, are not "property damage" as defined under the Policy. Accordingly, Allstate does not have a duty to defend Burnard for "property damage" by Knorr in the underlying state court action.

13

Since the state action does not allege "bodily injury" or "property damage," as required by the Allstate Policy at issue, Allstate has no duty to defend Burnard in the underlying lawsuit.  Because the Court finds that there is no duty to defend, it is not necessary to address Plaintiff's additional arguments that the underlying lawsuit does not allege injury or damage caused by an "occurrence," and that the claims at issue are excluded by the "intentional act exclusion."  However, the Court will briefly address these arguments in turn.

Allstate argues that Burnard's statements about Knorr do not constitute an "accident," and therefore an "occurrence" is not alleged in the underlying state court suit.  Burnard argues that negligent infliction of emotional distress is by its nature "accidental," and thus qualifies as an "occurrence" under the Policy.

"Occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions …" [Doc #1, ¶ 11].  The Connecticut Supreme Court has defined the term "accident" as "an unexpected happening" and a "sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance or a combination of causes and producing an unfortunate result." Commercial Contractors Corp. v. American Ins. Co., 152 Conn. 31, 42 (1964).  In turn, accidental conduct includes conduct that is negligent or reckless in nature.

> It is well established that, absent specific policy language to the contrary, accident insurance covers reckless conduct in addition to ordinary negligence.  This rule is required by the fundamental principles of tort law.  The term "recklessness" applies "to conduct which is still, at essence, negligent rather than actually intended to do

14

harm."

Hunter v. Peters, No. 423946, 2001 WL 34093937, at *5 (Conn. Super., December 13, 2001) (internal citations omitted).  Whether alleged conduct is accidental, and therefore an occurrence, depends however on whether the event causing the injury was accidental, as opposed to whether the resulting damages were unintended.  Providence Washington Ins. Group v. Albarello, 784 F. Supp. 950, 953 (D. Conn. 1992).

Accordingly, the Court will consider if the underlying complaint alleges only negligent or reckless behavior, or if It alleges intentional behavior.  Allstate contends that:

> . . . the making of repeated "false and malicious" statements to various individuals over the course of roughly a year, is not an accident. Regardless of whether harm was intended, these are allegations of deliberate and purposeful conduct, and the use of the label of "negligence" cannot transform this conduct into an "occurrence" or accident.

[Doc. #28].

In the underlying complaint, the plaintiff alleges the same conduct for all four counts: 1) that Burnard provided a statement at the Southbury Police Department, that wrongfully accused the plaintiff of misappropriating a valuable ring and other items from her; 2) that Burnard made similar wrongful allegations to members of her community; and 3) that Burnard's "publications were false and malicious" and made without a "reasonably careful investigation of the facts before publication and knowing said publications were false." [Doc. #28, Exh. 2].

**The underlying complaint therefore alleges conduct that was knowingly committed, as opposed to reckless or negligent conduct. It is the consequences of Burnard's alleged conduct in the underlying complaint that is unintentional, not the conduct itself. As a result, Burnard's statements were not accidental, and do not qualify as an "occurrence" under the Policy language.**

**Similarly, even absent the finding of the Court that "bodily injury" and "property damage" had not occurred, several of the claims in the underlying lawsuit would likely be excluded by the Policy's "intentional act exclusion". The Policy excludes coverage for ". . . bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts of the insured person." [Doc. #28, Exh. 1]. As noted, the underlying complaint alleges that Burnard's making of false statements was an intentional act. Therefore, the alleged acts are subject to the intentional act exclusion, unless the "bodily injury" is not reasonably expected to result from the statements made. In this era of heightened awareness of the physical manifestation of mental conditions such as stress and depression, it is reasonable to expect that a person subjected to the humiliation of defamation could suffer bodily harm, thus triggering the "intentional act exclusion", if there was a finding that such a "bodily injury" had been alleged. Allstate has no duty to defend Burnard in the underlying state court action.**

## B. Duty to Indemnify

It is well settled under Connecticut law that an insurer's duty to defend is broader than the insurer's duty to indemnify; the duty to indemnify cannot exist where there is no duty to defend. QSP, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 382, 773 A.2d 906 (Conn. 2001); EAD Metallurgical, Inc. v. Aetna Casualty & Surety Co., 905 F.2d 8, 11 (2d Cir.1990); DaCruz v. State Farm Fire and Cas. Co., 846 A.2d 849, 858 (Conn. 2004). Therefore, in the absence of a duty to defend, Allstate has no obligation to indemnify Burnard in the underlying state court action.

Burnard asserts that Allstate has no right to judgment as a matter of law on its duty to indemnify, because "any issues related to Allstate's duty to indemnify are premature, and cannot be fairly decided, via this federal litigation, prior to adjudication of the State Court Action." [Doc. #35 p. 2]. Burnard's argument is unavailing. Only where a duty to defend has been established will the Court reserve judgment pending the outcome of the underlying action. Cf. Korbusieski v. Chk Waterbury Associates, LLC, 2008 WL 4307482 (Conn. Super. 2008). Here, the Court has determined that Allstate has no duty to defend Burnard. It follows that, as a matter of law, Allstate can have no duty to indemnify Burnard where no duty to defend her exists.

Moreover, the outcome of the underlying suit will not influence whether Allstate has a duty to indemnify the Defendant: as the claims are currently alleged, it will make no difference whether each of the four counts - or some

combination thereof - are resolved in favor of Knorr or Burnard.  In any possible outcome, where no duty to defend exists because the allegations in Knorr's complaint cannot possibly fall within the Policy's coverage, it follows naturally that no duty to indemnify will occur after the underlying action is concluded. See QSP, Inc. v. Aetna Casualty & Surety Co., 256 Conn. 343, 773 A.2d 906 (2001). As a result, Allstate has no duty to indemnify Burnard in the underlying action state court action.

III. Conclusion

     For the foregoing reasons, and as the parties agree there are no genuine issues of material fact, Plaintiff's Motion for Summary Judgment [Doc. #28] is granted.  The following declaratory judgment shall enter: Plaintiff Allstate has no duty, under Renter's Policy, No. 084846647, to defend Defendant Burnard in the underlying lawsuit and no duty to indemnify Defendant Burnard or any party who may gain a judgment against her in the underlying lawsuit.  The Clerk of the Court is directed to close this case.

                    IT IS SO ORDERED

                    _____/s/_____

                    Hon. Vanessa L. Bryant
                    United States District Judge

Dated at Hartford: March 31, 2010